## DEAN RUBBER MFG. CO. et al. v. KILLIAN.

### No. 11428.

Circuit Court of Appeals, Eighth Circuit.

Aug. 14, 1939.

Rehearing Denied Nov. 8, 1939.

Arthur C. Brown, of Kansas City, Mo. (Arthur C. Brown, Jr., and Claude A. Fishburn, both of Kansas City, Mo., on the brief), for appellants.

F. O. Richey, of Cleveland, Ohio (B. D. Watts, of Cleveland, Ohio, Charles W. Gerard, of Kansas City, Mo., and Richey & Watts, of Cleveland, Ohio, on the brief), for appellee.

Before GARDNER and THOMAS, Circuit Judges, and WYMAN, District Judge.

WYMAN, District Judge.

This is an appeal from the District Court for the Western District of Missouri in a patent infringement suit instituted by Frank B. Killian, Trustee, as owner of the patent, hereinafter called the plaintiff, against Dean Rubber Manufacturing Company and Wilbur J. Dean, hereinafter referred to as defendants.

On November 2, 1926, the patent in suit, No. 1,605,445, was issued to one Fred L. Killian, and by reason of certain assignments the title to said patent was, on or about September 25, 1935, duly transferred to and vested in Frank B. Killian, Trustee, who is still the sole owner thereof.

The particular machine involved in the suit is designated in the letters patent as a "machine for manufacturing thin rubber articles" and while the machine performs several functions incident to the manufacture of such articles as toy balloons, nipples, finger cots, gloves, etc., this suit involves only those parts of the machine which have to do with the formation of an annular bead on the edge of the open end of the article while it is still on the form in an uncured, plastic condition. Those portions of the machine of the patent involved in this suit consist of a power-driven, endless, conveyor belt, mounted on two pulley wheels so as to operate longitudinally of the machine, upon which belt, at regularly spaced intervals, are mounted a number of upward projecting pins. Each of the forms or molds upon which the article to be manufactured is shaped is bored to receive and fit over any of the upright pins mounted on the conveyor belt. A groove or recess is cut into and around the lower circumference of the form so as to make a flange which, in operation, engages a strip on the side of the machine, which holds the form firmly in place, but permits it to rotate on the pin. Mounted on a shaft over the conveyor belt is a cylindrical, rotary brush, set at an incline, so placed in the path of the forms, as they are carried through the machine by the conveyor belt, that the revolving brush contacts the edge of the plastic rubber near the lower end of each of the forms. Mounted on the machine opposite to said rotary brush is a power-driven endless belt which operates longitudinally of said machine and is so placed that the face of said belt will engage the lower circumference of each form and impart a rotary motion thereto as it is carried past the brush. The forms are dipped into raw rubber liquid until they are coated with the same to the thickness required for the article to be manufactured. They are then placed on the pins on the conveyor belt and as they approach the brush the lower circumference of the forms comes in contact with the face of the endless belt which imparts to each form a rotary motion, revolving the same upon the pin in such a manner as to bring the entire circumference of the edge of the plastic rubber on the lower end of each of the forms in contact with the rotary brush as it is carried past the same. As the edge of the rubber film on the forms comes in contact with the revolving brush it is rolled up onto itself in such a manner as to form an even, compact bead around the entire edge of the open end of the article being manufactured.

The defendants' machine was designed to perform this same function in the manufacture of thin rubber articles and the principle involved in the rolling of the bead upon the article manufactured is the same in both machines. The forms, held in an upright position, are rotated as they are carried past and come in contact with a cylindrical revolving brush which rolls

up the rubber and forms the bead. In defendants' machine the forms are set in two rows at regularly spaced intervals upon form boards which are placed upon a conveyor chain and are rotated by means of a stationery rack attached longitudinally to the machine which engages a pinion which, in turn, revolves the form by the engagement of bevelled gears or ratchets cut in the lower end of the form and in the upper end of the pinion gear mechanism. As the forms, thus mounted, are carried along the machine by the conveyor, each row of forms progressively contacts an inclined, cylindrical, revolving brush which rolls the bead on the rubber article in identically the same way it is done by the plaintiff's machine.

The patent in suit includes twenty claims, ten of which, namely, 1–8, 9, 11 and 15 to 20, inclusive, have reference to the mechanism constituting the means to rotate the forms as the same are carried past the revolving brush, and it is these ten claims which the plaintiff asserts are infringed by defendants' machine.

The defendants base their defense upon the contention that the patent in suit is invalid and a denial of its infringement.

The record indicates that the defendants do not seriously contend that the patent in suit is necessarily invalid. It is their contention that it is a narrow structural or improvement patent defined and limited strictly by the terms upon which it was allowed and issued by the patent office, having an exceedingly narrow range of equivalents, and that, as such, it is valid, but to accord to it a range of equivalents broad enough to include defendants' device results in its invalidity for anticipation and lack of invention by reason of disclosures in Hadfield, No. 1,-097,017 and Brubaker, No. 1,192,383. These two patents represent the only prior art relied on by defendants in support of their claims of invalidity, and both of these patents are cited in the Patent Office proceedings in the application for the patent in suit. This same prior art was also relied on to show anticipation and non-invention in an earlier suit brought for the infringement of the patent in suit, against J. L. Shunk Rubber Co., in the District Court of the United States for the Northern District of Ohio; in the case for infringement of the patent in suit against Standard Rubber Co., in the District Court of the United States for the Northern District of Ohio; and the case brought for the infringement of the same patent against Perfection Rubber Co., in the District Court of the United States for the Northern District of Ohio; and in the case against Carl Schmid, Inc., brought for the infringement of said patent in the District Court of the United States for the Southern District of New York. (Neither of said cases being reported.) As well as upon the appeal of the last mentioned case to the United States Circuit Court of Appeals for the Second Circuit. Stevens v. Carl Schmid, Inc., 2 Cir., 73 F.2d 54. All of these suits resulted in decrees holding the patent in suit valid and infringed.

It seems to be well settled that the allowance and issuance of a patent by the patent office creates a presumption as to its validity (Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983; Radio Corporation of America v. Radio Engineering Laboratories, 293 U.S. 1, 55 S.Ct. 928, 79 L.Ed. 163), and there can be no question but what the presumption of validity is strengthened when the particular prior art relied upon by the defendant in an infringement suit was urged before, and considered by, the Patent Office, and the claims of the application were allowed over that art. Gairing Tool Co. v. Eclipse Interchangeable Counterbore Co., 6 Cir., 48 F.2d 73. In addition to this, the rulings of the various courts as to the question of validity undoubtedly add to the strength of the presumption of validity. Stevens v. Carl Schmid, Inc., 2 Cir., 73 F.2d 54; General Motors Co. v. Swan Carburetor Co., 6 Cir., 44 F.2d 24; Gulf Smokeless Coal Co. v. Sutton, Steele & Steele, 4 Cir., 35 F.2d 433. In view of the usual presumption springing from the issuance of the patent, strengthened as it is in this case by the several decrees of the court upholding the validity of the patent in suit, and the facts shown by the undisputed record in the case, we are convinced that the trial court's findings as to the validity of the patent in suit are correct.

The remaining question to be considered is that of infringement. In its consideration of the case the trial court divided the twenty claims in the patent in suit into three classes and selected claims numbered 1, 8 and 15, respectively, as representative and typical of said classes. That portion of each of said three claims

which is material to this discussion reads as follows:

Claim No. 1—The friction means directly engaging said forms to impart a rotary movement thereto while the same are in contact with said brush.

Claim No. 8—Means frictionally engaging said forms to impart a rotary movement thereto while the same are carried forward in contact with said brush.

Claim No. 15—Means to directly engage and rotate said forms.

It is the contention of the defendant that none of these claims read upon their device for the reason that in their device the forms are not rotated by the application of friction to them nor by the direct engagement of the means of rotation to the form itself, and that the force used in their machine for rotating the forms is not only not directly or frictionally applied as described in plaintiff's patent, but is not directly or frictionally applied at all. We cannot agree with this contention. It is true that in the accused machine the rotating device consists of a stationery rack on the machine which engages a pinion which includes a ratchet or bevelled gear, which engages a like gear on the lower end of the form, while in the machine of the patent the means for rotating the form is a longitudinal endless belt, the face of which engages the lower circumference of the form itself. In either case there is and, of necessity, must be a direct application of the power or force employed to the form itself. In the machine of the patent the endless belt which engages the circumference of the lower end of the form is the particular element of the rotating device which causes the form to rotate. In the accused machine, the pinion gear, including the ratchet or bevelled gear, which engages a like element in the lower end of the form itself, is the particular element which causes the form to rotate. The application of the power or force is direct in either case, and whether the rotating appliance be a rack and gear, as in the accused machine, or an endless belt, as in the machine of the patent, is immaterial as the claims of the patent in suit do not limit the means of rotating the form to friction, and for the further reason that a rack and pinion gear drive is a well-known substitute for a friction drive even in the most narrow range of equivalents. Hoe v. Cranston, C.C., 42 F. 837–840; Schey v. Giovanna, 2 Cir., 273 F. 515, 516.

Defendants contend that in their machine the power or means of rotating the form is not applied directly to the form but passed through the pinion gear, an intervening element, which they choose to call a transmission mechanism. This contention is wholly untenable. If the so-called transmission mechanism is a part of the means of rotating the forms, then the power passing through it comes in direct contact with the form; if, on the other hand, it is regarded as a part of the form mechanism, then the power coming to it from the rack is a direct application of power to the form. It is true that the means for rotating the forms in defendants' machine is mechanically different from that of the machine of the plaintiff, but, in our opinion the differences in the mechanism constituting the means of rotating the forms in these two devices, are purely mechanical, and that the substitution of defendants' rotating means for that of the plaintiff involves no inventive genius.

Notwithstanding the efforts of Hadfield, Brubaker, and others, those engaged in the manufacture of these thin rubber articles were forced to rely upon the slow and expensive hand labor method of rolling the beads until the invention of the machine of the patent. The record shows that the Killian machine immediately went into general use, and has supplanted the previous method of hand rolling in the industry. While Hadfield and Brubaker were undoubtedly working along the same principle or idea used by Killian, their machines were unsuccessful, never went into commercial use, and were abandoned years before the issuance of the patent in suit. We are inclined to agree with the plaintiff that neither Hadfield or Brubaker contributed anything to the art; that Killian was the first to produce a machine which successfully performed the function which had been formerly done by hand, and the mechanical performance of which had been long sought by the industry, and that the machine of the patent is, therefore, a pioneer invention. Hildreth v. Mastoras, 257 U.S. 27–34, 42 S.Ct. 20, 66 L.Ed. 112; Morely S. M. Co. v. Lancaster, 169 U.S. 263–273, 9 S.Ct. 299, 32 L.Ed. 715; Oles Envelope Corp. v. Baltimore Paper Co., 4 Cir., 89 F.2d 279. We are convinced that the mechanism for revolving the forms

of the accused machine was made to perform, and does perform, the identical function performed by the rotating means of the machine of the patent, and is clearly within the range of equivalents which should be accorded to a pioneer invention. The record discloses that numerous efforts have been made to provide a mechanical means for rolling the annular bead upon rubber articles in response to the urgent need of the art, but that no one, prior to Killian, had succeeded in producing such a machine, and even if regarded as no more than an improvement patent, it has demonstrated its worth and importance to such an extent as to entitle it to a broad range of equivalents approaching that accorded to a pioneer invention. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45–63, 43 S.Ct. 322, 67 L.Ed. 523.

The defendants also urge that plaintiff was estopped by the terms upon which his patent was allowed, as shown by the file wrapper, from asserting a breadth for the claims of his patent which would include defendants' device. The rule as to file wrapper estoppel is well stated by the Supreme Court in I. T. S. Rubber Co. v. Essex Rubber Co., 272 U.S. 429–445, 47 S.Ct. 136, 141, 71 L.Ed. 335, as follows: "It is well settled that where an applicant for a patent to cover a new combination is compelled by the rejection of his application by the Patent Office to narrow his claim by the introduction of a new element, he cannot after the issue of the patent broaden his claim by dropping the element which he was compelled to include in order to secure his patent."

While the file wrapper shows a rejection of certain of the original claims for anticipation by Hadfield, taken with Brubaker, and that the claims were amended and the patent issued upon the amended claims, a comparison of the original claims with those upon which the patent finally issued does not, in our opinion, disclose anything which would operate as a file wrapper estoppel. We find nothing in the proceedings before the examiner to indicate that the original claims were narrowed in their scope for the purpose of avoiding rejection. The language of the amended claims is, in some respects, more definite than that employed in the original claim, but reading all of the claims together, they are not essentially different than in their original forms. We find no evidence of a surrender of any substantial claim as a condition upon which the patent was issued. We cannot agree with defendants' contention as to file wrapper estoppel.

Defendants claim error on the part of the trial court in not dismissing the bill of complaint as to the defendant, Wilbur J. Dean. In our opinion the record in the case amply sustains the finding of the trial court that the defendants, jointly and severally, infringed the patent in suit. The record shows that Wilbur J. Dean was the active, directing head of the defendant company and was in charge of the operations of the plant and gave the orders for its operation; that he was a large stock holder and president of the defendant company; that he is the owner of the accused patent, and that the infringing machine was built and operated under his personal supervision. In our opinion these facts justify the findings of the court under the following well recognized statement of the rule: "We are of opinion, therefore, that by the general principles of law, and by analogy with other torts, a director of a corporation, who, as director, by vote or otherwise, specifically commands the subordinate agents of the corporation to engage in the manufacture and sale of an infringing article, is liable individually in an action at law for damages brought by the owner of the patent so infringed. As with other infringers, it is immaterial whether the director knew or was ignorant that the article manufactured and sold did infringe a patent." National Cash-Register Co. v. Leland, 1 Cir., 94 F. 502–511.

Finding no error in the record, the decree of the District Court is affirmed.