**WILDEN PUMP & ENGINEERING CO.,**
a corporation, Plaintiff/Appellee,

v.

**PRESSED & WELDED PRODUCTS CO.,**
a corporation, et al.,
Defendants/Appellants.

No. 79–4725.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1981.

Decided Sept. 8, 1981.

Jerome Falk, Howard, Prim, Rice Nemerovski, Canady & Pollak, A. P. C., San Francisco, Cal., H. Michael Brucker, Oakland, Cal., for defendants/appellants.

James W. Geriak, Lyon & Lyon, Los Angeles, Cal. (argued), for plaintiff-appellee; J. Donald McCarthy, Lyon & Lyon, Los Angeles, Cal., on brief.

Before SKOPIL, SCHROEDER and FARRIS, Circuit Judges.

SCHROEDER, Circuit Judge:

This case involves a device patented by the appellee, Wilden Pump and Engineering Company, and known as the "Wilden Pump." The district court entered judgment against the corporate defendants, Pressed and Welded Products Company and other interrelated corporations, individual officers, and an employee Walcott, finding all liable for increased damages as willful

infringers. We affirm the findings of validity and infringement of the patent but reverse the rulings that increased damages should be imposed and that Walcott should be held personally liable for the infringement.

The Wilden pump is an air actuated, diaphragm pump which is manufactured and sold by the appellee. It is typically used in dirty, sticky environments such as mines and oil refineries to pump a wide variety of materials. This litigation centers not upon the entire pump, but upon the pump's actuator valve: a piston device providing the driving force for operation of the pump itself. Because of the adverse conditions under which these types of pumps are employed, stalling of the actuator valve has been a problem. The improvement in question, comprised in claim 13 of the patent, can be simply described as the introduction of an extra burst of pressurized air to either side of the actuator valve piston's shift chambers at a critical point during the piston's back and forth shifting, thus ensuring that the piston will not stall.

Claim 13 describes the path of this pressurized air, from the ports where the air enters to the shift chambers on either side of the piston, as a "passage means sunk in the peripheral face" of the piston.[1] In the specifications and patent drawings, this "passage means" is described and illustrated as a T-slot groove (i. e. a transverse channel with a longitudinal groove) on the outside face of the piston. As actually manufactured by all parties, the "passage means" is achieved by a pinhole opening sunk in the face of the piston itself with an interior longitudinal passageway leading to the shift chamber area.

One of the appellants, Motoramic International, had been a distributor of the pump, but that distributorship agreement was terminated in early 1973. Thereafter, the appellants, by means of reverse engineering, copied the entire pump and began to sell it themselves.

In this litigation claim 13 is the only claim in the patent which the appellee asserts was infringed. The district court determined that claim 13 of the Wilden pump patent had been infringed and also determined that increased damages were in order. This 28 U.S.C. § 1292(a)(4) interlocutory appeal followed.

I. *Infringement*

Appellants initially assert both that there is no direct infringement of claim 13 and that their pinhole device is not the equivalent of the patented device. The appellants claim that the "passage means" described in claim 13 can only encompass the T-slot configuration illustrated and described by the patent's drawings and specifications. Thus, they claim that the pinhole configuration actually manufactured by the appellee and copied by appellants is neither protected by the patent nor infringed.

██ Generally, patent claims are construed liberally to uphold a patent's validity in order to secure the inventor's right to protect the substance of his invention. *Photo Elecs. Corp. v. England*, 581 F.2d 772, 776 (9th Cir. 1978); *see also Cool-Fin Elecs. Corp. v. International Elec. Research Corp.*, 491 F.2d 660, 662 (9th Cir. 1974). To determine whether an accused device infringes a valid patent, the court must look in the first instance to the words of the claim. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607, 70 S.Ct. 854, 855, 94 L.Ed. 1097 (1950); *Acme Highway Prods. Corp. v. D. S. Brown Co.*, 473 F.2d 849, 850 (6th Cir.), *cert. denied*, 414 U.S. 824, 94 S.Ct. 125, 38 L.Ed.2d 57 (1973). The claim, which

---

1. Claim 13 states, in relevant part, that the piston has the following elements:

 [P]assage means sunk in the peripheral face [of the piston] extending from a point at the side of said recess adjacent the first end of the piston to said first end and adapted to provide fluid communication from said inlet port to said first shift chamber, said first passage means being substantially blocked in the first operating position of said piston and being unblocked during movement of said piston from said first toward said second operating position to permit such communications; and means operatively associated with said shift chambers for alternately venting said shift chambers.

provides the formal definition of the invention, must point out and particularly claim the subject matter of the invention. *See Dvorsky v. United States*, 352 F.2d 373, 375 (Ct.Cl.1965), *cert. denied*, 396 U.S. 970, 90 S.Ct. 456, 24 L.Ed.2d 437 (1969); 35 U.S.C. § 112. After fully reviewing the language of claim 13 and specific attributes of its operation, the district court found that the pinholes sunk in the face of the piston, with their internal passageways, "constitute 'passage means sunk in the peripheral face' of the piston within the meaning of Claim 13." This finding, based on the words of the claim itself, is not clearly erroneous.

The district court further found that the pinhole and internal passageway was the equivalent of the T-slot illustrated and described in the patent's drawings and specifications. Under the doctrine of equivalents, if there is an insubstantial minor variation in a patented item, the patentee is still protected. "[I]f two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. at 608, 70 S.Ct. at 856. To determine whether the doctrine of equivalents should be applied to protect similar devices, a court must look at the similar device in the context of the patent, the prior art, and the particular circumstances of each case. Additionally, the court must consider whether persons reasonably skilled in the art would have known of the interchangeability of the devices. *Id.* at 609, 70 S.Ct. at 856–57. *See also Bowser, Inc. v. Filters, Inc.*, 396 F.2d 296 (9th Cir. 1968). The district court fully considered each of these factors in reaching the conclusion that the doctrine of equivalents was applicable. We again discern no error in that conclusion.

## II. *Validity of the Patent*

Aside from the questions of infringement, appellants also challenge claim 13's validity because of obviousness, lack of utility, and failure to disclose the best mode of carrying out the invention.

With respect to obviousness, appellants protest that the device covered by claim 13 of the Wilden patent is very similar to the device in another patent, the 1886 Toole patent,[2] and that claim 13 therefore fails to meet one of the essential conditions of patentability. 35 U.S.C. § 103;[3] *Satco, Inc. v. Transequip, Inc.*, 594 F.2d 1318, 1320 (9th Cir.), *cert. denied*, 444 U.S. 865, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979). While the issue of obviousness or non-obviousness ultimately involves a legal conclusion, the underlying analysis is essentially one of fact. *Stevenson v. Grentec, Inc.*, 652 F.2d 20, 22 (9th Cir. 1981); *Velo-Bind, Inc. v. Minnesota Mining & Mfg. Co.*, 647 F.2d 965, 971 (9th Cir. 1981); *Del Mar Eng'r Laboratories v. Physio-Tronics, Inc.*, 642 F.2d 1167, 1172–73 (9th Cir. 1981); *NDM Corp. v. Hayes Products, Inc.*, 641 F.2d 1274, 1277–78 (9th Cir. 1981); *St. Regis Paper Co. v. Royal Indus.*, 552 F.2d 309, 311 (9th Cir.), *cert. denied*, 434 U.S. 996, 98 S.Ct. 633, 54 L.Ed.2d 490 (1977). The obviousness or non-obviousness of the device is to be determined by looking at the scope and content of the prior art, the differences between the prior art and the device claimed, and the level of ordinary skill in the pertinent art. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966). The district court's factual findings regarding the scope and content of the prior art and the differences between the prior art and the claim in this suit indicate that the court considered and

---

2. In the district court, the appellants also contended that another patent, the 1888 Harris patent, which has not been briefed on appeal, made the Wilden patent obvious and therefore not subject to patentability. We likewise find substantial evidence in the record to support the trial court's determination that the Wilden patent is not made obvious by reviewing the Harris patent.

3. 35 U.S.C. § 103 provides:

A patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

answered each of the *Graham* factual questions. *See Velo-Bind, Inc. v. Minnesota Mining & Mfg. Co.*, 647 F.2d at 971. Those findings of fact are supported by substantial evidence in the record and the district court's conclusion that the device covered by claim 13 was not obvious from the prior art is not erroneous. *See id.; see also Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1272–73 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976).

Appellants also challenge the patent's validity on the ground that the device covered by claim 13 lacks utility. They contend first, that the device doesn't work and, second, that prior art adequately covered this "anti-stall" mechanism and therefore the Wilden patent made no significant contribution to the prior art.

Because the patent laws grant limited monopolies to inventors, a patent may be obtained only for new and useful inventions. 35 U.S.C. § 101. The question of utility is considered a question of fact. *Moore v. Shultz*, 491 F.2d 294, 300 (10th Cir.), *cert. denied*, 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974). Generally, "[c]ommercial success is strong evidence of utility and patentability especially in the absence of other competing devices; and where followed by defendants copying the patented device as closely as possible . . . is sufficient to establish utility." A. Deller, 1 Deller's Walker on Patents § 87 at 497 (2d ed. 1965). *Cf. Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 532 F.2d 1266, 1272–73 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976). In this case, the district court's examination of the prior art and its recognition of the Wilden pump's great commercial success because of the non-stalling device supports the finding that the invention does have utility.

The appellants' final attack on the validity of claim 13 relates to the "best mode" requirement of 35 U.S.C. § 112. That statute provides that the patent specifications shall contain a written description of the invention and "shall set forth the best mode contemplated by the inventor of carrying out his invention." No one disputes that the best mode contemplated by the inventor at the time of the patent application was the T-slot. Prior to actual issuance of the patent, however, the device was modified so that the pinhole and interior passageway was being utilized. The appellants argue that since this modification occurred prior to actual issuance of the patent, the inventor failed to reveal the best mode contemplated for carrying out his invention and therefore the patent is invalid.

Appellants' contention that the inventor has a continuing duty to report all modifications for the operation of an invention until such time as a patent actually issues is not legally supported. There has been no showing that the patentee engaged in fraud or deliberate misrepresentation in presenting the best mode in the patent specifications and illustrations at the time the application was filed. *See Carter-Wallace, Inc. v. Riverton Laboratories, Inc.*, 433 F.2d 1034, 1038 (2d Cir. 1970). *See also Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 461 F.2d 66, 73–74 (3d Cir.), *cert. denied*, 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972). In the absence of such a showing, compliance with section 112's requirement that the inventor disclose the best mode contemplated is to be judged as of the date the patent application is filed. *Application of Koller*, 613 F.2d 819, 823 (C.C.P.A. 1980); *Carter-Wallace, Inc. v. Riverton Laboratories, Inc., supra*. *See also Benger Laboratories, Ltd. v. R. K. Laros Co.*, 209 F.Supp. 639, 644 (E.D.Pa.1962), *aff'd*, 317 F.2d 455 (3d Cir.), *cert. denied*, 375 U.S. 833, 84 S.Ct. 69, 11 L.Ed.2d 64 (1963). Accordingly, the district court properly concluded that the patent was valid.

## III. *Willful Infringement and Increased Damages*

We now turn to the trial court's determination that the appellants' infringement was willful, intentional and deliberate, and therefore subject to an award of increased damages pursuant to 35 U.S.C. § 284. *See International Mfg. Co. v. Landon, Inc.*, 336 F.2d 723, 728 (9th Cir. 1964), *cert. denied*,

379 U.S. 988, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965).

We first consider the appellee's contention that the increased damages should not be reviewed at this stage of the proceedings. Relying upon *Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 532 F.2d 1266 (9th Cir.), *cert. denied*, 429 U.S. 896, 97 S.Ct. 258, 50 L.Ed.2d 179 (1976), the appellee argues that the court's determination that increased damages are in order is not subject to review in this Court until actual damages have been assessed after an accounting.

*Saf-Gard*, however, does not stand for the proposition that an increased damages determination should never be reviewed until after the accounting. In *Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 370 F.Supp. 257, 273 (D.Ariz.1974), the district court originally merely stated that increased damages should be imposed, and did not indicate the factual bases relied upon in reaching that conclusion. This Court decided not to review the question of increased damages before the accounting. *Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 532 F.2d at 1273. The district court, in the accounting proceedings, then addressed the underlying reasons for imposing increased damages. *Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 491 F.Supp. 996, 1004–05 (D.Ariz.1980).

 In the case before us now, however, the district court has not only stated its legal conclusion that the appellants' conduct was willful, wanton and deliberate, but also has fully articulated the evidence relied upon in reaching that conclusion. On appeal, we have the benefit of the court's fully voiced factual reasons for the conclusion reached, and we are neither usurping the district court's interest in making factual findings in the first instance, nor second guessing what may have been on the court's mind when it decided increased damages were in order. Thus where the district court's factual findings relating to the legal conclusion that there has been willful infringement are left for fuller articulation and determination at the time of accounting, it is proper to refrain from reviewing the issue. *See Saf-Gard Prods., Inc. v. Ser-*

*vice Parts, Inc.*, 532 F.2d at 1273; *Patterson-Ballagh Corp. v. Moss*, 201 F.2d 403, 408 (9th Cir. 1953). *See also Jeoffroy Mfg., Inc. v. Graham*, 206 F.2d 772, 779 (5th Cir. 1953), *cert. denied*, 347 U.S. 920, 74 S.Ct. 515, 98 L.Ed. 1075 (1954). But where the court has found that the infringement was willful, deliberate and wanton and has fully explicated its factual findings in that regard, under the clearly erroneous standard review is appropriate at this stage of the proceedings. *See International Mfg. Co. v. Landon, Inc.*, 336 F.2d 723, 728 (9th Cir. 1964), *cert. denied*, 379 U.S. 988, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965); *Elrick Rim Co. v. Reading Tire & Mach. Co.*, 264 F.2d 481, 488–89 (9th Cir.), *cert. denied*, 360 U.S. 920, 79 S.Ct. 1434, 3 L.Ed.2d 1535 (1959). The issue is thus properly before us on appeal and we will exercise our discretion to decide it rather than close our eyes "to what is plainly there. . . ." J. Moore, B. Ward, & J. Lucas, 9 *Moore's Federal Practice* ¶ 110.-25[1] at 273 (1980).

 In determining the question of infringement, the desire or intent to infringe a patent is irrelevant, *Hughes Tool Co. v. G. W. Murphy Indus., Inc.*, 491 F.2d 923, 928 (5th Cir. 1973); *Thurber Corp. v. Fairchild Motor Corp.*, 269 F.2d 841, 849 (5th Cir. 1959). However intent is crucial to the imposition of increased damages. *Ames Shower Curtain Co. v. Heinz Nathanson, Inc.*, 285 F.Supp. 640, 645 (S.D.N.Y. 1968). *See International Mfg. Co. v. Landon, Inc.*, 336 F.2d 723 (9th Cir. 1964), *cert. denied*, 379 U.S. 988, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965). Mere questioning of a patent's validity is not willful infringement. "Wilfulness is established only where it is shown that there was a deliberate purpose to infringe, and such a purpose is not found where the validity of the patent and any possible infringement is open to honest doubt." *International Mfg. Co. v. Landon, Inc., supra* at 728.

The district court here found that appellants decided to manufacture the infringing valve and embarked on a course of conduct to that end after they had been advised by their attorney in March 1973 that such ac-

tion would entail "a high degree of risk of infringement." The key language of the March letter, however, was referring to claims 1, 6, and 9 of the Wilden patent. Yet, only claim 13 is the subject of this suit. Claims 1, 6, and 9 have not even been asserted to have been infringed. As to claim 13, and the remaining claims in the patent, appellants' counsel advised, in the same March letter, that there was no risk of infringement because the Wilden pump as manufactured either differed from the claims as originally filed and issued or because the other claims were faulty on their face. Thus, as of March 1973, the appellants were apprised by counsel that claim 13 was either inapplicable or invalid. The letter therefore does not support a finding that the appellants deliberately infringed claim 13. Moreover, after appellants had advised their patent counsel to undertake further investigation of the Wilden patent, they were advised that claim 13 was believed to be invalid on the basis of an investigation of the prior art.

 Whether appellants may have had cause to worry about infringing other claims not the subject of this litigation is immaterial to any finding of willful infringement of claim 13. The district court's finding is therefore not supported by the record and we reverse the imposition of increased damages.

### IV. *Appellant Walcott's Liability*

Appellant Walcott was, along with the other appellants, found to have infringed the Wilden patent. Walcott had been an employee of Wilden for nine years prior to June 1972, and was hired by appellants on July 1, 1973. Although he had no technical education and was not competent to deal with technical matters, he was an experienced administrator in small manufacturing businesses and employed those skills to find suppliers for parts of the copied pump. In short, Walcott was a salaried employee who worked as an office manager for the appellants.

 No contention has been made that Walcott enjoyed profits or derived distinct benefits from the infringement separate from those of any other salaried employee. *See Palmer v. Landphere,* 99 F. 568 (C.C.D. Conn.1900) and 118 F. 52 (C.C.D.Conn.1902). The appellee simply maintains that Walcott should be held individually liable for the infringement because he was one of the moving, active conscious forces behind the appellants' infringement. All of the cases cited to us by appellees which imposed individual liability, however, involve persons who were significant shareholders in the corporation, executive officers or chief executives, presidents of the corporation, alter egos of the company, or other high ranking individuals with personal control, supervision, and direction of both the company and the copying of the patent. *See, e. g., Rex Chainbelt, Inc. v. General Kinematics Corp.,* 363 F.2d 336 (7th Cir. 1966) (original incorporator and alter ego); *International Mfg. Co. v. Landon, Inc.,* 336 F.2d 723 (9th Cir. 1964), *cert. denied,* 379 U.S. 988, 85 S.Ct. 701, 13 L.Ed.2d 610 (1965) (sole shareholder, president and alter ego of company); *Marks v. Polaroid Corp.,* 237 F.2d 428 (1st Cir. 1956), *cert. denied,* 352 U.S. 1005, 77 S.Ct. 564, 1 L.Ed.2d 550 (1957) (major shareholder in small family corporation, active participant in business); *Dean Rubber Mfg. Co. v. Killian,* 106 F.2d 316 (8th Cir.), *cert. denied,* 308 U.S. 624, 60 S.Ct. 380, 84 L.Ed. 521 (1939) (stockholder, president of company and owner of accused patent). No cases have been cited where a non-management, salaried employee, without more, was found to be an individually liable infringer, and we have found none. Some of appellant Walcott's activities related to the trade secret and unfair competition claims which were resolved against the appellee in this case. We find no basis for holding, however, that Walcott was in personal control of the appellants' operations and was acting as its "guiding spirit and the active directing hand in full charge of its operations", *International Mfg. Co. v. Landon, Inc.,* 336 F.2d at 728, in connection with any patent infringement. We therefore reverse the imposition of individual liability as to Walcott.

Affirmed in part, reversed in part, and remanded for an accounting.