WILDEN PUMP & ENGINEERING CO.,
a corporation, Plaintiff,

v.

PRESSED & WELDED PRODUCTS CO.,
a corporation, et al., Defendants.

No. 76–0030 SW.

United States District Court,
N.D. California.

June 20, 1983.

James W. Geriak, J. Donald McCarthy, James H. Shalek, Lyon & Lyon, Los Angeles, Cal., for plaintiff Wilden Pump & Engineering Co.

A. James Robertson II, Steven Schon, Peter Busch, Howard, Rice, Nemerovsky, Canady, Robertson & Falk, San Francisco, Cal., for defendants Pressed & Welded Products Co.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

## MEMORANDUM OF LAW AND ORDER

Upon consideration of the parties' submitted memoranda of law, and oral arguments of June 8, 1983, IT IS HEREBY ORDERED THAT DEFENDANTS' Motion for Partial Summary Judgment is DENIED. A brief discussion of the Court's reasoning, as well as explanation of the method by which the Court intends to proceed in this matter, is provided below.

## FACTS:

This is a patent infringement case, which has been remanded to this Court from the Ninth Circuit, for an accounting of damages suffered by the plaintiff ("Wilden") as a result of defendants' ("PW") infringement of its patented design of the actuator valve on Wilden pumps ("Claim 13").

The Ninth Circuit's ruling on appeal, while affirming this Court's finding that PW had infringed upon Claim 13, reversed this Court's finding of "willful infringement" on the basis of the evidence articulated in the record, as well as limited liability for the infringement to the corporate defendants. See *Wilden Pump & Eng. Co., v. Pressed & Welded Products, Co., et al.,* 655 F.2d 984 (9th Cir.1981). The Circuit did reiterate this Court's finding that the litigation

centers not upon the entire pump, *but upon the pump's actuator valve ... the improvement in question, comprised in claim 13 of the patent, ...* the introduction of an extra burst of pressurized air to either side of the actuator valve pis-

ton's shift chambers at a critical point ... thus ensuring that the piston will not stall.

*Id.* at 986, *emphasis added.* This discussion dispels any reasonable doubt as to what technology of Wilden's was infringed upon by PW's "knock-off".[1]

The Circuit also summarized this Court's appraisal of the value of Claim 13, concluding that

... the district court's examination of the prior art and its recognition of the Wilden pump's great commercial success because of the non-stalling device supports the finding that the invention does have utility.

*Id.* at 988. Thus, contrary to PW's assertions, this Court, with the Ninth Circuit's confirmation, has ruled that the valve's design *in toto* plays an integral part in the pump's commercial success.

## LAW:

Although defendants' arguments bespeak undoubted creativity and fervor, they advocate a resolution which is both unsupported by the clear language of the statute, 35 U.S.C. § 284, and interpretative case precedent, as well as suggests disastrous policy toward the promotion and protection of intellectual property. We discuss each of these shortcomings briefly below.

Basically, PW argues that this Court should rule, as a matter of law, that the appropriate measure of damages for its infringement of Wilden's patent is a "reasonable royalty", rather than some computation of profits Wilden would have reaped, but for its misappropriation of Claim 13. This contention rests upon PW's claim that Wilden cannot establish that (1) it would have made PW's sales, but for PW's infringement upon its "pinhole" design; and, (2) any profits from those sales were lost as a result of the infringement. By these arguments, PW shifts the focus of the applicable statute, and reinterprets the case law, in its attempt to avoid our weighing

---

1. In rejecting PW's attempt to limit the patent to protect merely the "pinhole feature" of the actuator valve, we dismiss the arguments which assume that this "pinhole" design was the infringed patent.

and considering the evidence presented on the question of Wilden's damages. We turn to the statute and the case precedent to redirect our focus.

■ The applicable statute for assessing damages from patent infringement provides, in pertinent part:

[u]pon finding for the claimant the court shall award the claimant *damages adequate to compensate for the infringement,* but *in no event less than a reasonable royalty for the use* made of the invention by the infringer, *together with interest and costs as fixed by the court.*

. . . . .

The court *may receive expert testimony as aid to the determination of damages* or of *what royalty* would be *reasonable under the circumstances.*

35 U.S.C. § 284, *emphasis added.* There are three important aspects of this statute: (1) that the appropriate measure of damages is inherently a factual inquiry; (2) that the Court may, in its discretion, award interests and costs against the infringer; and, (3) that the Court may rely upon specialized expertise of masters or witnesses to interpret and weigh the submitted evidence, in determining the damages. *See Photo Electronics Corp. v. England,* 581 F.2d 772 (9th Cir.1978); *Panduit Corp. v. Stahlin Bros.,* 575 F.2d 1152 (6th Cir.1978); *W.L. Gore & Assoc. v. Carlisle Corp.,* 198 U.S.P.Q. 353 (D.Del.1978); *Ellipse Corp. v. Ford Motor Co.,* 461 F.Supp. 1354 (N.D.Ill.1978).

■ Summary judgment is inappropriate to resolve the issue of what damages Wilden suffered as a result of PW's infringement for several reasons. First, *all* that remains on remand is this Court's determination if the disputed evidence, submitted by both parties, establishes Wilden's lost profits by reason of PW's infringement with "reasonable probability". If not, then this Court must again turn to disputed evidence, as well as established facts, in determining a "reasonable royalty". *See, e.g., Panduit Corp.* at 1156–57.

As Wilden points out, there is no authority to support PW's interpretation of § 284's mandate to this Court, once Wilden has come forward with admissible and probative evidence on the "question whether the defendant(s) would have made all or some of the sales (without duplicating the actuator valve)." *Hughes Power Tool Co. v. G.W. Murphy Industries, Inc.,* 491 F.2d 923, 929 (5th Cir.1973). While PW is correct in its assertion that Wilden must bear a "heavy burden" of persuasion on this issue, (*Aro Manufacturing Co., v. Convertible Top Co.,* 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1961)), the resolution of this burden is appropriate to a full hearing and consideration of the evidence at trial. *Id.* To characterize a court's decision to award "reasonably probable" profits, instead of "reasonable royalties" for the infringed patent, as other than a formal conclusion, inextricably dependent upon the underlying evidence for any significance, would be unwarranted by case law. By this motion, PW attempts to have this conclusory "tail" wag the "dog" of still indeterminate size. See *Panduit Co.* at 1156–1157.

■ The approach to establishing damages which we find resoundingly endorsed in the case law is a three-step inquiry. First, a court, or special master, should consider all relevant evidence as to how much the patent was worth and the damages to the patentee from the infringement. This includes such matters as market demand for the patented product, the existence and availability of noninfringing "substitutes" and Wilden's manufacturing and marketing capability to exploit market demand. *Id.* Next, if Wilden cannot establish within a "reasonable probability" the amount of profit it would have made but for PW's infringement, in light of the factors above, those factors may be considered in setting a reasonable royalty to be assessed PW for its use of "claim 13". Finally, the Court must adjust Wilden's total recovery to approximate "damages adequate to compensate" for PW's infringement, without reference to simply a profit equation but, upon all factors, may be an amount no *less* than what the evidence suggests a "reasonable royalty" would have been. After adding

costs and interest, there is no inevitable relationship between the award to the patentee as damages, and his speculative profit figure. See *Aro Manufacturing Co.* at 507, 84 S.Ct. at 1543; *Panduit Corp.* at 1157–1159.

We reject the defendants' approach to the question of the appropriate damages to be awarded Wilden for an additional reason. As many of the cases cited by the parties explicitly, and tacitly, acknowledge, presumptively limiting an award to a "reasonable royalty" would turn what is best a legal fiction into a legal conclusion without support in reality. As the Sixth Circuit articulated

> [t]he setting of a reasonable royalty after infringement cannot be treated, as it was here, as the equivalent of ordinary royalty negotiations among truly 'willing' patent owners and licensees. That view would constitute a pretense that the infringement never happened. It would also make an election to infringe a handy means for competitors to impose a 'compulsory license' policy upon every patent owner.

*Panduit Corp.* at 1158. By its interpretation of § 284, PW hopes to capitalize upon the law's rigorous demands upon Wilden to carry the burden of persuasion at trial, thus achieving indirectly what the cases prohibit—allowing a competitor to compute a cost/benefit analysis of usurping another's patent *ex ante.* This would be the result of our adopting the approach suggested here: shifting the full weight of its burden at trial onto Wilden at the summary judgment stage. However, as it has done here, Wilden must merely come forward with admissible evidence which establishes that there is a tenable dispute between the parties as to the patent's "value" to Wilden.

Although "value" can be an elusive concept, we feel that a competent and fair assessment, either in terms of profit to Wilden from pump sales or from licensing

"claim 13", can be made by an expert in this highly technical discipline. To this end, this Court hereby orders the parties to designate special master(s) as necessary in the following fields: patent law, pump technology, accounting, financial projections, marketing and industrial engineering. The Court will appoint such master(s) as it deems necessary to a full and fair evaluation of all the evidence presented on the patent's "value", apportioning the cost of such experts between the parties. This allocation shall be in direct proportion to the variance between the amount awarded to Wilden, and the amounts claimed at the commencement of this proceeding by the parties.[2]

In setting costs awarded to Wilden, this Court will take due note of whether, at any point in the litigation, unreasonable intransigence on either, or both, litigants' parts unnecessarily prolonged the litigation, and increased the attorney's fees.

IT IS SO ORDERED.

---

2. For example, if Wilden demands $1.5 million damages, and PW has offered $100,000, allegedly *its* profit on the pump, as a result of the infringement, and the award is $500,000, the division of costs for special master(s) will be apportioned ⁵⁄₇s to Wilden, and ²⁄₇s to PW. On

the other hand, if the award is $1 million to Wilden, the costs will be levied ⁵⁄₁₄s to Wilden, and ⁹⁄₁₄s to PW. The parties will submit these estimations as to final award simultaneously with a list of special masters to the court within 45 days of entry of this order.