**In the Matter of the Application of Horst KOLLER, Alfons E. Hartl and Gerhard Kirchner.**

**Appeal No. 79–589.**

United States Court of Customs and Patent Appeals.

Jan. 24, 1980.

Roger L. Browdy, Washington, D. C., attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents and Trademarks, Harry I. Moatz, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NEWMAN, Judges.*

---

\* The Honorable Bernard Newman, United States Customs Court, sitting by designation.

1. This case is a continuation of application serial No. 356,785, filed May 3, 1973, (now U.S.

BALDWIN, Judge.

This is an appeal from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection of claims 1–3 and 5–14 in appellants' application serial No. 582,774, filed June 2, 1975, entitled "Method of Isomerizing Humulone to Isohumulone by Catalytic Acceleration with Metal Salts."[1] The claims are rejected as anticipated under 35 U.S.C. § 102. We reverse.

### The Invention

Appellants claim a method for producing isohumulone from humulone. Isohumulone is a chemical said to be useful as a tuberculosis retardant. It is also the essential part of "hops-bitters" used in the brewing of beer.

The claimed invention involves the steps of forming a liquid mixture of the reactant humulone, a sufficient amount of certain metal salts (the cation of which is a member of Group IIa or IIb, or the Iron group of the periodic table, or cerium and manganese) said to be catalytic or complex-forming, and a "liquid medium." The desired isomerization takes place at an "elevated temperature," desirably at the boiling point of the system, and at a pH preferably between 4 and 9.

Claims 1 and 13 are illustrative of the invention:

1. A method for preparing isohumulone products, comprising:

providing a mixture of (1) a salt productive in an aqueous medium of an anion and a cation, said anion being inert to the starting material and inert to the isohumulone products under the operating conditions of the present method, and said cation being an element selected from the group consisting of Group IIa or IIb elements, Fe group elements, cerium

Patent No. 3,952,061, hereinafter "the parent") which in turn is a continuation-in-part of serial No. 725,458, filed April 30, 1968, now abandoned (hereinafter "the grandparent").

and manganese, (2) humulone or a humulone-containing material, and (3) a liquid medium, inert to the starting materials and to the isohumulone produced under the operating conditions of the present method, said liquid medium being one in which said salt dissociates to form said anion and said cation and said humulone or humulone-containing material dissociates to form humulate anion; and

isomerizing at an elevated temperature, at a pH below 9 and greater than that pH at which humulone forms humulate anion in solution;

wherein said salt is present in an amount sufficient to accelerate said isomerization.

13. A method of preparing isohumulone products, comprising:

combining (1) humulone or humulone-containing material, (2) a liquid medium inert to the reaction materials, in which both humulone and the salt to be used are soluble, and (3) a salt productive in said liquid medium of an elemental cation of an element selected from the group consisting of Group IIa and IIb elements, Fe group elements, cerium and manganese in an amount sufficient to accelerate isomerization; and

isomerizing at an elevate [sic] temperature, at a pH lower than about 9 and above 4.

## The Rejection

The examiner rejected all of the claims under 35 U.S.C. § 102 as unpatentable in view of Worden, U.S. Patent No. 3,923,897, filed April 2, 1973. Worden discloses a similar process but in the main was utilized for its disclosure of Todd (Belgian patent No. 782,900 or U.S. Patent No. 4,002,683). Todd is admitted by all parties to be anticipatory of the claims (if the grandparent lacks § 112 description) especially in view of its discussion of the British equivalent to the grandparent application of this case.

## Background

■ The ultimate issue in this case is whether or not the grandparent application provides a written description of the claimed invention in the manner required by 35 U.S.C. § 112. If it does, the decision of the board with regard to § 102 is improper since the filing date of the grandparent is prior to the effective date of any of the cited references.

The bone of contention between the parties here is the meaning to be assigned the term "liquid medium." The basic argument stated by the PTO is that the term varies in breadth from the grandparent to this case. The appellant maintains that the term is a broad term throughout.

The examiner, in his Answer, specifically discussed the term and his view of the etymology of the term:

The grandparent application discussed the process throughout the disclosure referring to "liquid medium", "solvent", "dispersing agent", etc. However, the specific disclosure with respect to the solvent system used discloses, "As a reaction medium one can in principle use water to which, however, a water-miscible organic solvent is added as solubilizer, since humulon is practically insoluble in water. As mentioned above, water-ethanol mixtures are preferred." None of the examples in the grandparent application use other than aqueous systems consisting of water or water in addition to a water-miscible solvent such as ethanol. It is only with the filing of the continuation-in-part application, the parent of this application, now U.S. Patent No. 3,952,061, that appellants added examples drawn to the use of water-immiscible solvent systems. Appellants recognized the fact that there was no support in the original application to claim the use of a water-immiscible system which they are now trying to recoup in view of the Worden patent disclosure. It is interesting to note that in the parent application, appellants cancelled all claims directed to the use of water-immiscible solvent systems in view of a rejection over there[sic] own priority documents which had become available as prior art. * * * Up until Worden published his invention, no one

had ever isomerized the alpha-acids of hops resins to iso-alpha acids in non-aqueous systems. It was Worden that [sic] discovered the great processing benefits that accrued to the use of such a system. The use of aqueous systems in place of non-aqueous systems prior to Worden was unknown. Therefore, appellants cannot allege that the use of non-aqueous systems was implied in their original disclosure since it was not specifically used, disclosed or known in the art at that time. Appellants readily admit that they added new matter in the continuation-in-part application but are attempting to imply that it was there all the time. If it were present in the parent (grandparent of this application), the new matter would not have been needed nor the additional added examples. Appellants [sic] position is believed to be in error since (1) there is no specific disclosure of the use of non-aqueous systems, the contrary being true, and (2) it cannot be inferred that the use of non-aqueous systems would have [been] readily apparent to one skilled in the art prior to Worden since the use of non-aqueous systems was the invention of Worden and not known in the art at that time.

The board affirmed the rejection and in doing so stated:

The Examiner holds that the grandparent application does not contain a description of water-immiscible solvents as the liquid medium in which the isomerization is effected.

The appellants argue that the term "liquid medium" set forth in the grandparent application broadly covers all solvents in which the isomerization is effected and hence encompasses the water-immiscible solvents shown by Worden.

We have carefully considered all of the arguments but we are not convinced of reversible error in the Examiner's rejection. The instant application is not entitled to the benefit of the filing date of the grandparent application since it fails to satisfy the description requirements of 35 U.S.C. § 112 with respect to the disclosure of water-immiscible solvents. Al-

though the grandparent application employs the term "liquid medium" for the isomerization of humulone, we do not find that it clearly and unequivocally describes the use of water-immiscible solvents. We find no delineation nor express description of any water-immiscible solvent either generally or specifically to serve as support for the present claims which encompass such solvent.

The use of aqueous or aqueous-alkanol media at 50°C or above, as disclosed in the earlier application, does not serve as basis for liquid medium such as methylene chloride indicated by Todd (cited by appellants) as suitable at ambient temperature. We find nothing in the grandparent to suggest the use of water-immiscible solvents or that isomerization can be effected below 50°C. The concept of isomerization taking place in the organic water-immiscible phase is nowhere suggested, taught or described by appellants prior to the filing of their parent application on May 30, 1973. Nor, as pointed out by the Examiner, would it have been obvious to employ such solvents at that time.

Considering the disclosure as a whole, one of ordinary skill in the art at the time of the filing of the grandparent application, would have been taught how to isomerize humulone by addition of polyvalent metal salts in aqueous or aqueous alkanolic media. The broad recitation "liquid medium" would have been construed by one skilled in the art from the disclosure as consisting of water or water to which a miscible organic solvent is added. The term as now interpreted by appellants is broader than that disclosed in the grandparent application.

The subsequent discovery by Todd, referred to in Worden, of employing water-immiscible solvents for the isomerization step merely confirms the unpredictable and unobvious nature of the liquid medium and as such, requires a clearer disclosure thereof than that which appellants provided in the grandparent. The finding by Todd, for which a patent was

obtained, that water-immiscible solvents could be used for isomerization below 50°C cannot *nunc pro tunc* be considered as part of appellants' invention as of the time of the grandparent application which is completely devoid of any concept of effecting the isomerization at low temperature, that is, below 50°C.

We do not find the issue here to be a question of enablement but to be more properly one of description in the grandparent application. The fact that the recitation "liquid medium" might include water-immiscible solvents is not sufficient indication to one of ordinary skill at that time that such medium was part of appellants' invention. *In re Winkhaus et al.*, 527 F.2d 637, 188 USPQ 129 (CCPA 1975). On the contrary, a fair reading of the grandparent disclosure would have led one to conclude that the isomerization in water and water-miscible media was appellants' contribution. Accordingly, it is our view that appellants are not entitled to the benefit of their grandparent application and the rejection of the claims under 35 U.S.C. § 102 over Worden is sustained.

## OPINION

■ The solicitor argues that the recitation of the broad term "liquid medium" in the body and claims of the grandparent specification is merely "fortuitous"[2] and must be understood to mean only the narrower term "water-miscible solvent." The

reasoning supplied by the PTO is that disclosed narrow classes, examples and enumerated compounds must be considered in fleshing out, giving meaning to and therefore limiting a generic expression. Certainly, the disclosure of specifics *adds* to the understanding one skilled in the art would glean from a generic term, but it does not follow that such added disclosure *limits* the meaning thereof. *See In re Fuetterer*, 319 F.2d 259, 50 CCPA 1453, 138 USPQ 217 (1963). Indeed, neither a listing of representative compounds nor an example is always necessary in completely describing a generic class. *See In re Robins*, 429 F.2d 452, 57 CCPA 1321, 166 USPQ 552 (1970). If a specification provides a statutory description via a generic expression which is understandable, the presence of specific examples cannot, in ex parte practice,[3] be said to limit that expression.

■ Compliance with § 112, paragraph one, is to be judged as of the date the application is filed. *In re Hogan*, 559 F.2d 595, 194 USPQ 527 (CCPA 1977); *In re Glass*, 492 F.2d 1228, 181 USPQ 31 (CCPA 1974). A comparison of the claims in this case, supra, with the original claims in the grandparent[4] reveals not only that the term "liquid medium" is found in both places, but also that the two sets of claims are similar in wording. In *In re Gardner*, 475 F.2d 1389, 177 USPQ 396 (CCPA 1973), this court noted that original claims constitute their own description. Later added

2. It is apparent that appellants specifically placed the broad phrase in the grandparent specification and supplemented it by a narrower phrase and certain examples. Why the deliberate act of the inventors in placing two phrases of varying scope in the document is "fortuitous" is manifestly unclear.

3. Claims are given the broadest reasonable interpretation, consistent with the specification, during prosecution of an application. However, claims in an issued patent may sometimes be interpreted by a court "in light of the specification" so as "to protect only that phase of the claimed invention that constitutes patentable subject matter and thus do justice and equity between the parties." *In re Prater*, 415 F.2d 1393, 1404, 56 CCPA 1381, 1395, 162 USPQ 541, 550 (1969).

4. The grandparent's original claims 1 and 2 provide:

    1. A method of preparing isohumulon by isomerization of humulon or humulon-containing material at elevated temperatures in a liquid medium, characterized by the fact that the isomerization catalyzes by addition of at least one salt of a bivalent metal or of cerium.

    2. A method according to claim 1, characterized by the fact that as catalyst there are used salts of elements of groups IIA or IIB of the periodic system of the elements, of the iron group of the periodic system of elements, or of cerium or manganese.

claims of similar scope and wording are described thereby.

Nevertheless, the PTO argues that Todd is evidence that, as of the filing date of the grandparent, one having ordinary skill in the art would not have recognized the inclusion of water-immiscible solvents within the scope of the term "liquid medium." Todd does disclose, at a subsequent time, that water-immiscible solvents are useful in the process.

■■■ We recognize that, under certain narrow circumstances, later-issued patents and publications may be used to show the state of the art existing on the date of the application in question.[5] However, the circumstances here do not fit any exception to the general rule that language in a specification is to be understood for what it meant to one having ordinary skill in the art at the time the application was filed. *In re Glass*, supra; *In re Argoudelis*, 434 F.2d 1390, 58 CCPA 769, 168 USPQ 99 (1970). Todd's discussion of the invention found in the grandparent was based on his reading of the "British Patent Specification published 16 July 1969." Consequently, whatever Todd may have said concerning the meaning of the phrase "liquid medium" must be understood to have occurred at some time after July 1969—a time clearly subsequent to the filing date of the grandparent in April of 1968.

This case parallels *In re Hogan*, supra. Hogan filed an application in 1953 (to which the application there in issue was related under 35 U.S.C. § 120) disclosing a solid polymer produced from 4-methyl-1-pentene. The only method disclosed entailed the production of a *crystalline* polymer. During 1962 another applicant disclosed that an *amorphous* form of the polymer could be produced. The PTO challenged the scope of enablement in that 1953 specification in asserting, based on the subsequent 1962 disclosure, that the generic disclosure did not encompass amorphous polymers but only crystalline ones.

We remanded that case and stated:

Though we do not reach the point on this appeal, we note appellants' argument that their invention is of "pioneer" status. The record reflects no citation of prior art disclosing a solid polymer of 4-methyl-1-pentene, which may suggest that appellants at least broke new ground in a broad sense. * * * As pioneers, if such they be, they would deserve broad claims to the broad concept. What were once referred to as "basic inventions" have led to "basic patents," which amounted to real incentives, not only to invention and its disclosure, but to its

---

5. These circumstances were listed in *In re Hogan*, supra, 559 F.2d at 605 n.17, 194 USPQ at 537 n.17:

Where, for example, a later publication evidenced that, *as of an application's filing date*, undue experimentation would have been required, *In re Corneil*, 347 F.2d 563, 568, 52 CCPA 1718, 1724, 145 USPQ 702, 705 (1965), or that a parameter absent from the claims was or was not critical, *In re Rainer*, 305 F.2d 505, 507 n.3, 49 CCPA 1243, 1246 n.3, 134 USPQ 343, 345 n.3 (1962), or that a statement in the specification was inaccurate, *In re Marzocchi*, 439 F.2d 220, 223 n.4, 58 CCPA 1069, 1073 n.4, 169 USPQ 367, 370 n.4 (1971), or that the invention was inoperative or lacked utility, *In re Langer*, 503 F.2d 1380, 1391, 183 USPQ 288, 297 (CCPA 1974), or that a claim was indefinite, *In re Glass*, supra, 492 F.2d at 1232 n.6, 181 USPQ at 34 n.6, or that characteristics of prior art products were known, *In re Wilson*, 311 F.2d 266, 50 CCPA 773, 135 USPQ 442 (1962). Whatever may have been said enroute to decision in these cases, the fact situation in none of them established a precedent for permitting use of a later existing state of the art in determining enablement under 35 USC 112. [Emphasis in original.]

One additional comment was made in *In re Voss*, 557 F.2d 812, 818 n.15, 194 USPQ 267, 272 n.15 (CCPA 1977):

We note the dictum in footnote 6 of *Glass* * * * [*In re Glass*, 492 F.2d 1228, 1232, 181 USPQ 31, 34 (CCPA 1974)] indicating that later-issued patents or publications may be used to construe claim language. However, it is clear from the quotation from *In re Fisher*, 427 F.2d 833, 838, 57 CCPA 1099, 1106, 166 USPQ 18, 23 (1970), set forth in the footnote that the PTO can rely on such later-issued patents and publications only if a showing is made that such claim language is the "language of the present art" as of the filing date of the application in question. The PTO has made no such showing in this case.

prompt, early disclosure. If later states of the art could be employed as a basis for rejection under 35 USC 112, the opportunity for obtaining a basic patent upon early disclosure of pioneer inventions would be abolished. [Supra, 559 F.2d at 606, 194 USPQ at 537.]

In *Hogan*, an analysis using later-filed references to determine the scope of enablement was found to be impermissible. Similarly, it cannot be allowed when, as here, the description requirement is an issue.

In sum, the phrase "liquid medium" in the present claims is described in the grandparent case in the manner required by 35 U.S.C. § 112, paragraph one. Consequently, the decision of the board of appeals affirming the rejection under § 102 is *reversed*.

REVERSED.