865 F.2d 1247
 57 USLW 2436, 9 U.S.P.Q.2d 1461
 UNITED STATES STEEL CORPORATION, Hercules, Inc., Shell Oil
Company, Northern Petrochemical Company, Himont, U.S.A.,
Inc., Aristech Chemical Corporation, National Distillers and
Chemical Corporation, and El Paso Products Company, Appellant,
v.
PHILLIPS PETROLEUM COMPANY, Appellee.
 Nos. 88-1166 to 88-1171
 United States Court of Appeals,
Federal Circuit.
 Jan. 10, 1989.
 
 Kenneth E. Madsen, Kenyon & Kenyon, New York City, and Stanton Lawrence, Pennie & Edmonds, New York City, argued for appellant. Francis T. Carr, Alan T. Bowes and James Galbraith, Kenyon & Kenyon, New York City, were on the brief, for appellant, of counsel. Also James A. Power, Jr., Pennie & Edmonds, of New York City, was on the brief, for appellant.
 Harry J. Roper, Neuman, Williams, Anderson & Olson, Chicago, Ill., argued for appellee. With him on the brief, were Sidney Neuman, Nicholas A. Poulos and George S. Bosy, Chicago, Ill.
 Before MARKEY, Chief Judge, NIES and MICHEL, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 Consolidated appeals from a judgment of the United States District Court for the District of Delaware, Phillips Petroleum Co. v. United States Steel Corp., 673 F.Supp. 1278, 6 USPQ2d 1065 (D.Del.1987) (Longobardi J.), that defendants United States Steel Corporation and its successor in interest, Aristech Chemical Corporation; Hercules Inc.; Shell Oil Company; Northern Petrochemical Co. and its successor in interest, National Distillers and Chemical Corporation; Himont, U.S.A., Inc.; and El Paso Products Company (collectively defendants) had not proved United States Patent No. 4,376,851 ('851 patent) invalid or unenforceable, and that Phillips Petroleum Company (Phillips) had "met the burden required to prove that each of the consolidated defendants['] propylene homopolymer products infringe[s] the claim of the '851 patent." We affirm the district court in all respects.
 
 BACKGROUND
 
 2
 The basic concepts of polymer chemistry, the history of polypropylene, and the interference and court proceedings leading to Phillips' '851 patent are exhaustively explored and explicated in Judge Longobardi's full-service opinion. See Phillips Petroleum, 673 F.Supp. at 1278, 6 USPQ2d at 1065; see also Standard Oil Co. v. Montedison S.p.A., 494 F.Supp. 370, 207 USPQ 298 (D.Del.1980) (Wright, J.), aff'd, 664 F.2d 356, 212 USPQ 327 (3d Cir.1981), cert. denied, 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982). Familiarity with those opinions being assumed, we discuss only the dispositive facts in conjunction with defendants' arguments to which they relate.
 
 The Claim
 
 3
 The sole claim of the '851 patent, which had been the count of the interference, reads:
 
 
 4
 Normally solid polypropylene, consisting essentially of recurring propylene units, having a substantial crystalline polypropylene content.[1]
 
 
 5
 The '851 patent issued on an application filed in 1956 as a continuation-in-part of application Serial No. 333,576 filed by Hogan and Banks on January 27, 1953 (the 1953 application) and of application Ser. No. 476,306 also filed by Hogan and Banks on December 20, 1954 (the 1954 application).[2]
 
 Defendants' Presentation of the Appeal
 
 6
 I. In attacking the holding that they had not proved the '851 patent invalid, defendants state several grounds for invalidity: (1) anticipation by U.S. Patent No. 3,112,300 (the '300 patent) to Montecatini (an Italian Corporation) as assignee of Guilio Natta et al.; (2) inadequate disclosure of specific utility under 35 U.S.C. Secs. 101 and 112; (3) obviousness in light of Patent No. 2,692,257 ('257 patent) to Standard Oil Company (Indiana) as assignee of Alex Zletz; (4) double patenting (same-invention and obviousness types).
 
 
 7
 II. Defendants attack the finding of infringement on grounds that the district court erred in: (1) concluding that defendants admitted literal infringement; (2) construing the prosecution history, determining the scope of the claim, and treating interference estoppel; and (3) considering the reverse doctrine of equivalents.
 
 
 8
 III. Defendants say the district court erred in not finding Phillips guilty of inequitable conduct in the PTO.
 
 OPINION
 I. Validity
 
 9
 (1) Anticipation
 
 
 10
 It is undisputed that the '300 patent[3] would anticipate the '851 patent if Phillips were not entitled to rely on the filing date of the 1953 application. See 35 U.S.C. Sec. 120 (1982).[4] Defendants argue that Phillips is not so entitled because the 1953 specification neither describes nor enables (35 U.S.C. Sec. 112) what they call the "broad" claim of the '851 patent.
 
 
 11
 (a) The 1953 Specification
 
 
 12
 The 1953 specification says the invention relates to the polymerization of olefins and that one "aspect of the invention is concerned with the production of novel tacky and solid polymers." That specification was before our predecessor court in In re Hogan, 559 F.2d 595, 598, 194 USPQ 527, 530 (CCPA 1977), where the court said the "application discloses solid polymers made from 1-olefin monomers having a maximum chainlength of eight carbon atoms and no branching nearer the double bond than the 4-position." The specification discloses that polymerization of propylene in the presence of a chromium oxide catalyst yields a solid polymer having a melting point in the range of 240 to 300? F, density in the range of 0.90 to 0.95, an intrinsic viscosity in the range of 0.2 to 1.0, and a weight average molecular weight range of approximately 5,000 to 20,000. The specification also discloses that the polypropylene compounds produced had individual molecular weights ranging from about 200 to about 50,000.
 
 
 13
 (b) District Court Opinion
 
 
 14
 The district court concluded that Phillips could rely on the filing date of the 1953 application (removing the '300 patent as prior art) because "[t]he properties described [in the 1953 specification] would indicate to one skilled in the art that Phillips was in possession of a new, crystalline form of propylene," 673 F.2d at 1290, 6 USPQ2d at 1072, and because undisputed evidence "demonstrated that [the specification] enable[d] the production of [the] polypropylene of the '851 claim." Id. at 1292, 6 USPQ2d at 1073.
 
 
 15
 In the district court's view, defendants' arguments and evidence missed the point:
 
 
 16
 [W]ith respect to both the written description and enablement requirements, [d]efendants have misconstrued the inquiry under section 112. They have sought to read into the '851 claim a molecular weight/intrinsic viscosity limitation which simply is not there. Nearly thirty-five years after Phillips' application was filed, they fault Phillips for not describing a polypropylene of high molecular weight/intrinsic viscosity, a property which we now know to be extremely important. A patent applicant is not required, however, to predict every possible variation, improvement[,] or commercial embodiment of his invention.
 
 
 17
 Id. at 1292, 6 USPQ2d at 1074 (citations & footnote omitted) (emphasis in original). Further evaluating the evidence, the district court noted that the "great deal of [defendants'] evidence designed to demonstrate the differences in physical and mechanical properties of their commercial polypropylenes, on the one hand, and polypropylene having an intrinsic viscosity within the range specified in the 1953 application," was such that it "in no way aids [d]efendants in their attempt to establish the inadequacy of Phillips' 1953 application." Id. at 1290 n. 5, 6 USPQ2d at 1072 n. 5.[5]
 
 
 18
 (c) Defendants' Arguments on Anticipation
 
 
 19
 Defendants do not dispute that: (1) the properties reported in the 1953 specification indicate that the polypropylene has substantial crystallinity; (2) the 1953 specification described crystalline polypropylene; (3) Hogan and Banks were the first to polymerize crystalline polypropylene; (4) polypropylene prepared by Hogan and Banks before the 1953 filing date contained the same crystalline isotactic structure exhibited by the Natta polypropylene made with a Ziegler catalyst; and (5) the 1953 specification enabled one skilled in the art to practice the claimed invention, i.e., to make recurring units of polypropylenes "having a substantial crystalline polypropylene content."
 
 
 20
 Challenging no finding of the district court, defendants argue that the court misstated the law. Per defendants, "[t]he question is not what the claim 'sets forth,' but what it embraces. If it embraces subject matter for which no adequate basis exists in the underlying disclosure, the claim is too broad." Pointing to differences in intrinsic viscosity and average molecular weight, defendants argue that the 1953 disclosure does not "reasonably convey[ ] to the artisan that the inventor had possession at the time [1953] of all of the later-claimed subject matter," and that "the scope of enablement provided to that artisan by the prior application was [not] reasonably commensurate with the full scope of protection sought by the later claim." (Emphasis defendants'). Stripped to its basics, defendants' argument is one of "overbreadth", but that word alone has long ago been discredited as a basis for determining sufficiency of a specification. See In re Marzocchi, 439 F.2d 220, 223, 169 USPQ 367, 369, 58 CCPA 1069 (1971) (Patent Office should be concerned with support or non-support of a generic term, not its breadth); In re Hogan, 559 F.2d 595, 605-06, 194 USPQ 527, 537 (CCPA 1977) ("Rejections under Sec. 112, first paragraph, on the ground that the scope of enablement is not commensurate with the scope of the claims, orbit about the more fundamental question: To what scope of protection is the applicant's particular contribution to the art entitled?").
 
 
 21
 It is true that adequacy of support is judged in relation to the scope of the claims, see In re Moore, 439 F.2d 1232, 1236, 169 USPQ 236, 239, 58 CCPA 1042 (1971); In re Borkowski, 422 F.2d 904, 909, 164 USPQ 642, 646, 57 CCPA 946 (1970), but defendants fail to recognize that "application sufficiency under Sec. 112, first paragraph, must be judged as of the filing date." In re Glass, 492 F.2d 1228, 1232, 181 USPQ 31, 34 (CCPA 1974); see In re Hogan, 559 F.2d at 604, 194 USPQ at 535 (Sec. 112's enablement requirement); In re Koller, 613 F.2d 819, 823, 204 USPQ 702, 706 (CCPA 1977) (Sec. 122's written description requirement). In the context of section 120, in this case, focusing on the filing date requires that the claim of the '851 patent be treated as though it were filed in 1953. Only if that claim would at that time have been correctly rejected for lack of support in the 1953 specification may the patentee be denied use of section 120 to predate the intervening reference to the '300 patent. See In re Hogan, 559 F.2d at 604, 194 USPQ at 537.
 
 
 22
 In re Koller is particularly illustrative. The claims there at issue and claims contained in a grandparent application contained the broad term "liquid medium." The PTO board held that appellants could not rely on the grandparent's filing date because "[t]he broad recitation 'liquid medium' would have been construed by one skilled in the art from the disclosure as consisting of water or water to which a miscible organic solvent is added." 613 F.2d at 822, 204 USPQ at 705. Because of a later discovery that water-immiscible solvents could be used, the board emphasized that "[t]he term [liquid medium] as now interpreted by appellants is broader than that disclosed in the grandparent application." Id. The board concluded:
 
 
 23
 The fact that the recitation "liquid medium" might include water-immiscible solvents is not sufficient indication to one of ordinary skill at that time that such medium was part of appellants' invention. On the contrary, a fair reading of the grandparent disclosure would have led one to conclude that the isomerization in water and water-miscible media was appellants' contribution. Accordingly, it is our view that appellants are not entitled to the benefit of their grandparent application....
 
 
 24
 Id. at 823, 204 USPQ at 705 (citation omitted).
 
 
 25
 Our predecessor court reversed, citing the general rule that "language in a specification is to be understood for what it meant to one having ordinary skill in the art at the time the application was filed," id. at 824, 204 USPQ at 706, and noting that support need be found for only the claimed invention, in view of how one skilled in the art at that time would construe the claims and would read its specification. Id.; see Ralston Purina Co. v. Far-Mar-Co., Inc., 772 F.2d 1570, 1575, 227 USPQ 177, 179 (Fed.Cir.1985).
 
 
 26
 Defendants' misdirected approach here is the same as that improperly relied upon by the PTO in Hogan. Defendants do not, as they cannot, argue that the 1953 specification fails to enable one skilled in the art to practice the claimed invention. That the '851 claim may cover a later version of the claimed composition (crystalline polyproplene with higher intrinsic viscosity and average molecular weight) relates to infringement, not to patentability. See In re Hogan, 559 F.2d at 607, 194 USPQ at 538.[6] To hold differently would, in the words of Hogan, "impose an impossible burden on inventors and thus on the patent system." 559 F.2d at 606, 194 USPQ at 537.
 
 
 27
 In sum, in determining sufficiency of support it is the state of the art in 1953 and level of skill in the art at that time that is critical. Id. at 605, 194 USPQ at 537 ("i.e., of the condition of knowledge about all art-related facts existing in 1953").
 
 
 28
 Thus the district court correctly held defendants' evidence immaterial to the section 112, first paragraph inquiry. The central flaw in defendants' evidence, as recognized by the district court, is that it was directed solely to a later state of the art. The record evidences that until 1954, when Natta used the Ziegler catalyst, no one thought it possible that propylene monomers could be polymerized into polyproplene with an intrinsic viscosity of 1.7 to 2.0 and an average molecular weight approaching 50,000. Similarly insufficient is defendants' evidence that the art since 1930 recognized the desirability of high molecular weight polymers. Hogan and Banks disclosed polypropylene with far better properties, including an average molecular weight up to 20,000, than were known in the art in 1953. Moreover, evidence of record establishes that crystallinity gives polypropylene the properties of tensile strength, stiffness, and hardness, and, as above indicated, defendants concede that Hogan and Banks were the first to teach crystallinity.
 
 
 29
 Simply put, defendants' reliance on the 1953 specification's listing of the properties of the polypropylene produced and there disclosed is bootless. As stated in In re Koller: "[c]ertainly, the disclosure of specifics adds to the understanding one skilled in the art would glean from a generic term, but it does not follow that such added disclosure limits the meaning thereof." 613 F.2d at 823, 204 USPQ at 705 (emphasis in original).[7]
 
 
 30
 (2) Specific Utility
 
 
 31
 Contrary to Defendants' arguments, the district court did not err in determining that defendants failed to meet their burden of showing "that the 1953 application is defective under [35 U.S.C. Secs.] 101 and 112." 673 F.Supp. at 1333, 6 USPQ at 1108.[8]
 
 
 32
 The court's section 101 finding must be affirmed because we affirm, infra, the court's infringement finding. See Raytheon Co. v. Roper Corp., 724 F.2d 951, 959, 220 USPQ 592, 598 (Fed.Cir.1983) ("correct finding of infringement of otherwise valid claims mandates as a matter of law a finding of utility under Sec. 101"), cert. denied, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984).
 
 
 33
 We affirm the court's conclusion that defendants had not proven the 1953 specification's description of utility defective under section 112. That defendants' arguments are baseless is immediately apparent upon reading Judge Longobardi's rejection of those arguments. See 673 F.Supp. at 1325-33, 6 USPQ2d at 1101-08.
 
 
 34
 (3) Obviousness
 
 
 35
 The district court did not err in determining that defendants had not, by clear and convincing proof, established facts requiring a conclusion that the claimed invention would have been obvious to one of ordinary skill in the art. See 35 U.S.C. Sec. 103 (1982). Defendants are unpersuasive in arguing that the court erred in construing the '257 patent's disclosure. Nor do defendants show to have been clearly erroneous the finding that Mr. Peters deviated from the '257 patent's teaching in experiments P-1 and P-9. See Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1984); Fed.R.Civ.P. 52(a).
 
 
 36
 In sum, we find no error in the district court's assessment of the content of the prior art or its assessment of the differences between that art and the claimed invention.
 
 Conclusion on Validity
 
 37
 Defendants have shown no error in the district court's determination that they failed to carry their burden of proof on the issue of validity. 35 U.S.C. Sec. 282 (1982).
 
 
 38
 II. Infringement--Reverse Doctrine of Equivalents
 
 
 39
 Having found that the defendants' polypropylene literally infringed the '851 claim, the district court went on to reject defendants' arguments directed to the reverse doctrine of equivalents.[9] Saying the district court misconstrued that doctrine, defendants, as they did at trial, compare their product with only that disclosed in the 1953 application. Defendants' comparison fails, first, because, as they concede, the 1953 specification disclosed polypropylene having substantial crystallinity. Second, as correctly noted by the district court, the claim of the '851 patent issued on Phillips' 1956 application. We agree with the district court that the principle of the claimed invention, as corroborated by the work of Hogan and Banks between 1951 and 1953 and the 1953 application, "is the production for the first time of crystalline polypropylene." 673 F.Supp. at 1354, 6 USPQ2d at 1126, and that defendants made no change at all in that principle.
 
 
 40
 Defendants supply no legal basis or equitable ground, and we see none, for restricting the coverage of the claim to less than its admitted literal scope.[10] We are unpersuaded of error of any kind in the district court's consideration of the "principle" of the claimed invention, see Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605, 608-09, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950)) and its rejection of defendants' argument based on a misdirected comparison. In sum, defendants have not shown that the district court's finding of infringement was clearly erroneous.[11]
 
 III. Remaining Arguments
 
 41
 We have carefully considered defendants' arguments regarding: (1) double patenting (including the construction of claim 16 of U.S. Patent No. 2,825,721); (2) literal infringement (based on asserted errors in construction of the prosecution history, determination of claim scope, and treatment of interference estoppel); and (3) inequitable conduct. We find none persuasive of error in the district court's disposition of any of those issues and none of sufficient import to require discussion here of that disposition.[12]IV. Conclusion
 
 
 42
 The judgment of the district court is affirmed in all respects.
 
 
 43
 AFFIRMED.
 
 
 
 [1]
 All parties agree that the "crystalline" content of the polypropylene claimed in the '851 patent occurs because all the pendent methyl groups (CH 3 ) are oriented in a regular pattern on the "same side" of the polymer backbone (i.e., in an "isotactic" arrangement)
 For more extensive discussion of the technology, see 673 F.Supp. at 1284-86, 6 USPQ2d at 1067-68; 494 F.Supp. at 376-78, 206 USPQ at 687-89.
 
 
 [2]
 Because the 1953 and 1954 applications and specifications are virtually identical, we discuss only the former
 
 
 [3]
 The '300 patent describes the preparation of crystalline polypropylene using catalysts developed by Professor Karl Ziegler. Ziegler and Natta were awarded Nobel prizes for their discoveries
 
 
 [4]
 Section 120 reads:
 An application for patent for an invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States, ... by the same inventor shall have the same effect, as to such invention, as though filed on the date of the prior application, if filed before the patenting or abandonment of or termination of proceedings on the first application or on an application similarly entitled to the benefit of the filing date of the first application and if it contains or is amended to contain a specific reference to the earlier filed application.
 
 
 [5]
 That evidence included showing that the accused polypropylenes had higher intrinsic viscosities and average molecular weights than the corresponding properties set forth in the 1953 specification, and evidence tending to indicate, in defendants' view, that "the propylene of the 1953 application is weak and brittle" and "essentially useless as a plastic," whereas the accused polypropylenes are "tough materials, resistant to stress" having "plastic properties."
 
 
 [6]
 Defendants' attention is particularly directed to the discussion of In re Ranier, 390 F.2d 771, 156 USPQ 334, 55 CCPA 853 (1968), and In re Fisher, 427 F.2d 833, 166 USPQ 18, 57 CCPA 1099 (1970), found in Hogan. In Hogan the court noted that statements in In re Moore, that " 'the scope of enablement' must be 'commensurate with the scope of protection sought,' impel[led] clarification." 559 F.2d at 605, 194 USPQ at 536
 
 
 [7]
 It is of no moment in this case that the 1953 specification differs from the '851 patent specification. The former provides support for the claimed invention and the latter does not undermine that support
 
 
 [8]
 "We review utility [Sec. 101] as a question of fact and enablement [Sec. 112] as a question of law." Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1268, 229 USPQ 805, 810 (Fed.Cir.1986), cert. denied, 479 U.S. 1030, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987)
 
 
 [9]
 The reverse doctrine of equivalents can in some cases be seen as conceptually and linguistically difficult to apply when the claim is drawn to chemical compounds or compositions. The doctrine speaks of performance of a "function" in a substantially different "way." The district court here did not face that difficulty, having focused on the "principle" of the contribution made by the inventor and found it unchanged in the accused product
 
 
 [10]
 We especially note that the claim of the '851 patent was the count of a thirteen-year, five-party interference set up to determine priority in relation to what the defendant's classify as the invention of "high molecular weight" polypropylene
 
 
 [11]
 That the product claimed in the '300 patent may be patentable does not mean that a person making, using, or selling that product cannot be guilty of infringing the '851 patent. "Dominating" patents are not uncommon. See In re Kaplan, 789 F.2d 1574, 1577, 229 USPQ 678, 681 (Fed.Cir.1986)
 
 
 [12]
 Because the district court made a separate, independent finding of literal infringement, a finding not shown to have been clearly erroneous, we need not and do not discuss defendants' argument on whether they "admitted" literal infringement