EN LIUNG HUANG, an individual, Pioneer Pacific Incorporated, a California Corporation, Plaintiffs,

v.

AUTO–SHADE, INC., a California corporation and, Avi Ruimi, an individual, Defendants.

No. CV 92 6487 RJK.

United States District Court, C.D. California.

Nov. 13, 1996.

Dain & Li, Anthony J. Dain, San Diego, CA, for Plaintiffs.

Lewis Anten, A Professional Corporation, Lewis Anten, Dorie Choderker, Amedeo Ferraro, Encino, CA, for Defendants.

### ORDER AS TO *MARKMAN* TRIAL ISSUES OF LAW

KELLEHER, District Judge.

On November 12, 1996, this Court heard arguments from Plaintiffs and Defendants as to what issues of law should be addressed at a *"Markman* Trial." Based on the oral arguments of counsel, the trial briefs submitted by the parties, and the corresponding declarations, this Court makes the following rulings.

### I. THE *MARKMAN* DECISION

As a patent case, this trial necessarily takes place in the shadow of the recent Supreme Court decision in *Markman et al. v. Westview Instruments, Inc., et. al.,* —— U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), *aff'g,* 52 F.3d 967 (Fed.Cir.1995). *Markman* clearly holds that the construction of scope and meaning of the patent is a question of law for the court to decide, although the ultimate question of infringement remains for the jury. *Id.* at ——, 116 S.Ct. at 1393. Expert testimony upon this question is both permissible and appropriate if the court finds it to be of assistance in reaching its determination of the meaning of the language of the patent. *Id.* at ——, 116 S.Ct. at 1394.

As a consequence of this decision, the Plaintiffs and Defendants both requested that this Court hold a so-called *"Markman* hearing" or *"Markman* trial" that would precede the jury phase of the trial. The exact character of the *Markman* trial is currently unsettled in the federal courts. What is clear is that prior to the jury trial portion of a patent case, the court must hear arguments, take evidence as it deems necessary in its discretion, and make a determination, as to the meaning and scope of the patent claims in question.

To this end, this Court entertained oral argument at a *Markman* trial on November 12, 1996. The initial determinations made following these proceedings are set out below.

### II. PURPORTED ISSUES OF LAW FOR *MARKMAN* DETERMINATION

As set out in the Revised Pre–Trial Conference Order, filed on November 8, 1996, the parties were unable to agree to on the issues of law to be addressed by the Court at the *Markman* trial. Plaintiffs assert that only "Construction of the claims" is a *Markman* issue. Defendants, on the other hand, delineate nine issues of law which they contend are to be addressed at the *Markman* trial. Because Plaintiffs' broad "construction" issue is represented in a number of Defendants' stated issues, this Order will address the issues as set forth by Defendants.

### A. *Defendants' Issues of Law (a) through (d)*

■ It is the opinion of this Court that Defendants' issues of law items (a) through (d) on pages eight and nine of the Revised Pre-trial Conference Order were properly presented and argued as *Markman* issues at the *Markman* proceedings which took place on November 12, 1996. These issues can be described as (a) what is the meaning and scope of specific language employed in the patent claims, (b) what is the scope of the claims of the patent in suit generally, (c) were claims broadened in the reexamined patent, and (d) are the claims of the reexamined patent in suit identical to the claims of the original patent in suit.

Plaintiffs and Defendants have briefed these issues, have provided declarations in

support of their arguments, and have made further representations during oral arguments. Plaintiff further asserted that one issue—that of broadening of claims in the reexamined patent—has already been determined by this Court. However, regardless of whether the Court has previously and conclusively addressed the broadening issue (as to which the Court does not intend to make a ruling herein), at the very least the impact of any such conclusive finding on the *Markman* proceedings still must be addressed. At this time, this Court orders these issues of law, presented in items (a) through (d), and discussed above, taken under submission.

### B. Defendants' Issue of Law (e): File Wrapper Estoppel

■ Defendants state, as item (e) on pages nine and ten of the Revised Pre–Trial Conference Order, as an issue of law, "does file wrapper estoppel restrict the scope of the claim language to prevent infringement?" Defendants are incorrect in characterizing this as an issue of law to be determined at the *Markman* trial.

First and foremost, prosecution history estoppel (or file wrapper estoppel) is an affirmative defense to liability under the doctrine of equivalents only. It is a matter of law to be determined by the court *after* the plaintiff both has failed to prove literal infringement and has succeeded in proving equivalent infringement (under the doctrine of equivalents). Accordingly, there appears to be no need and no cause for the Court to address the matter before the jury trial beings. This ruling is not to be interpreted as a finding that the "file wrapper" is not relevant at all prior to the jury trial. The file wrapper *is* relevant in construing the meaning and scope of the claims of the patent in suit. However, file wrapper *estoppel* is a separate and distinct doctrine that is not yet relevant in this matter.

The guiding principle in file wrapper estoppel is that a plaintiff should not be able to sue a defendant for infringement, if the plaintiff has previously argued that the patent claims should not be interpreted so as to cover prior art similar to that of the now

accused device. File wrapper estoppel bars "a patentee from enforcing its claims against otherwise legally equivalent structures if those structures were excluded by claim limitations added in order to avoid prior art." *Mannesmann Demag Corp. v. Engineered Metal Prods. Corp., Inc.,* 793 F.2d 1279, 1284 (Fed.Cir.1986). Whether estoppel applies is a question of law. *Wang Laboratories, Inc. v. Toshiba Corp.,* 993 F.2d 858, 867 (Fed.Cir. 1993) (citations omitted). Beyond the language of the claim, "[u]nmistakable assertions made by the applicant to the Patent and Trademark Office (PTO) in support of patentability ... also may operate to preclude the patentee from asserting equivalency...." *Texas Instruments, Inc. v. United States' Int'l Trade Comm'n,* 988 F.2d 1165, 1174 (Fed.Cir.1993).

Defendants may later attempt to argue that various assertions made by Plaintiffs, to the Patent and Trademark Office, will preclude Plaintiffs, through file wrapper estoppel, from asserting infringement by Defendants. But, again, this is not an issue to be taken up now. It is to be taken up only if these proceedings eventually reach the jury issue of liability under the doctrine of equivalents. File wrapper estoppel is an affirmative defense to that liability and is thus not yet relevant.

### C. Defendants' Issue of Law (f): Intervening Rights

■ In item (f) on page ten of the Revised Pre–Trial Conference Order, Defendant states as an issue of law, "Are Defendants entitled to intervening rights pursuant to 35 U.S.C. § 252, and if so, what is the extent of such intervening rights?" Defendants are incorrect in characterizing this as an issue of law to be determined at the *Markman* trial.

Defendants list "intervening rights under 35 U.S.C. § 252" on its contentions of law to be determined by the Court at the *Markman* trial. Robert L. Harmon sums up the doctrine as follows:

Under the doctrine of intervening rights, as spelled out in the second paragraph of § 252, an infringer may, because of prer-eissue activity, enjoy a personal intervening right to continue what would otherwise

be infringing activity after the reissue. The underlying rationale for intervening rights is that the public has the right to use what is not specifically claimed in the original patent.... Therefore, one may be able to continue to infringe a reissue patent if the court decides that equity dictates such a result.

ROBERT L. HARMON, PATENTS AND THE FEDERAL CIRCUIT 601 (3d ed.1994). Harmon concludes by noting that this is an equitable decision which rests with the trial court. At the *Markman* proceedings of November 12, 1996, the parties each agreed that this was an equitable decision to be made by the judge. Also on November 12, both parties agreed that this determination might better be made after the jury trial. While the *Markman* proceedings may allow for the determination of whether or not the claims in the reexamined patent are identical (a finding that could impact upon intervening rights), such a determination does not encompass the entirety of the equitable balancing involved in weighing out whether intervening rights should be granted to the Defendants. Intervening rights is thus not yet relevant and not appropriate for review in the *Markman* setting.

### D. Defendant Issues of Law (g) and (h): Reverse Doctrine of Equivalents

■ In items (g) and (h) on page ten of the Revised Pre–Trial Conference Order, Defendants state as an issue of law, "Does the reverse doctrine of equivalence [sic] apply in the event that the claims of the Patent in Suit do read on the Accused Device?" and "Whether the reverse doctrine of equivalents would preclude a finding of infringement, if it is found that the claims of the Patent in Suit literally read on the accused device?" Essentially, Defendants ask the Court to address, before the jury trial, whether the reverse doctrine of equivalents (the "reverse doctrine") applies in this case such that Defendants would be exonerated even if the accused device is later found to literally infringe on the patent in suit. Defendants are incorrect in characterizing this as an issue of law to be determined at the *Markman* trial.

■ The reverse doctrine attains in the situation where, *after the jury has found that the claims literally read on the accused device,* the accused device is found to have changed *so much* that it is no longer the same invention. Defendants assert that its device is so vastly an improvement upon the Plaintiffs' patented device that even though the jury may find literal infringement, the reverse doctrine will protect the Defendants from liability.

■ Defendants seem to believe that this issue is a legal question to be addressed by the court—not the jury. To the contrary, the reverse doctrine of equivalents is a factual determination to be made by the jury— *after* literal infringement has been found. To summarize the doctrine, the reverse doctrine of equivalents requires both (1) that there must be apparent literal infringement of the words of the claims, and (2) that the accused device must be sufficiently different from that which is patented such that despite the apparent literal infringement, the claims are interpreted to negate infringement. *Texas Instruments, Inc. v. United States Int'l Trade Comm'n,* 846 F.2d 1369 (Fed.Cir. 1988).

Plaintiffs correctly point out that the Federal Circuit has specifically approved the use of a test which focusses upon whether the "principle" of the contribution made by the inventor is changed in an accused product. *United States Steel Corp. v. Phillips Petroleum Co.,* 865 F.2d 1247, 1253 (Fed.Cir.1989). In that case, the principle of the plaintiff's patent was the production for the first time of a certain chemical combination; the court found no infringement because Defendant made no change at all in the underlying principle. *Id.* Accordingly, for the Defendants to assert the reverse doctrine of equivalents, the principle of the Defendants' device would have to have evolved, rather than the Defendants simply using the Plaintiffs' device in a different way. *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1124 (Fed.Cir.1985).

Certainly the reverse doctrine may be relevant to this case. But as to when it comes up at trial, this Court follows the Federal Circuit in determining that it is a fact ques-

tion to be determined by the jury. The Federal Circuit explains:

> The patentee bears the burden of proving infringement by a preponderance of the evidence. Initially that burden is carried when literal infringement has been proved. When a patentee establishes literal infringement, the accused infringer may undertake the burden of going forward to establish the fact of non-infringement under the reverse doctrine of equivalents. If the accused infringer makes a *prima facie* case, the patentee, who retains the burden of persuasion on infringement, must rebut that *prima facie* case.
>
> . . . .
>
> [T]he reverse doctrine of equivalents ... raises a fact question, determinable on inquiry into whether a product has been so far changed in principle that it performs the same or similar function in a substantially different way.

*Id.* at 1123–24 (citations omitted).

The parties should carefully note that the reverse doctrine of equivalents only comes into play after a *literal* infringement has been found; that is, a clear and exact violation of each of the Plaintiffs' patented claims. To take up the matter now would both remove it from the jury, the proper trier of fact, and pose an interesting procedural problem. The reverse doctrine of equivalents is a defense to literal infringement. Defendants cannot assert the matter now, but must raise it when offering their defense to the Plaintiffs' assertions of literal infringement.

*E. Defendants' Issue of Law (i): Doctrine of Equivalents*

■ In item (i) on page ten of the Revised Pre–Trial Conference Order, Defendant states as an issue of law,

> If, based on the rulings of the Court on the scope and meaning of the claims, the doctrine of equivalents is applicable, is it an equitable matter such that the issues [sic] of independent creation is a complete defense to the application of the doctrine of equivalents, and that the matter is to be determined by the Court.

The Defendants then note that the Supreme Court has granted certiorari to *Hilton Davis Chemical Co. v. Warner–Jenkinson Co.,* 62 F.3d 1512 (Fed.Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996).

■ The doctrine of equivalents is an entire independent method by which an accused defendant can be liable for infringement—wholly distinct from literal infringement. The test for infringement under the doctrine of equivalents is "whether the accused device performs substantially the same function in substantially the same way to obtain substantially the same result." *ZMI Corp. v. Cardiac Resuscitator Corp.,* 844 F.2d 1576, 1581 (Fed.Cir.1988) (citing *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608–09, 70 S.Ct. 854, 856–57, 94 L.Ed. 1097 (1950)).

■ At its core, the doctrine of equivalents, just like liability for literal infringement, is a fact question to be decided by the jury. *Hilton Davis,* 62 F.3d at 1521. *Hilton Davis* is particularly relevant to this case in that it deals with the doctrine of equivalents and its unique statutes as a matter of equity (understood broadly, as in "fairness") to be addressed by the jury. *Id.*

As it currently stands, *Hilton Davis,* an *en banc* decision of the Federal Circuit, clearly states that the doctrine of equivalents is an issue that should be addressed by the jury. Though it is an "equitable" doctrine, this is only true in so far as it is a judicially created remedy meant to serve fairness. The doctrine, overall, is not one of equity such that it is an issue to be determined by the court. Defendants, nevertheless, assert that three issues related to the doctrine are issues of law to be decided now in the *Markman* trial. Defendants ask the Court to address: (1) equitable determination by the court (and independent creation), (2) insubstantial difference, and (3) prosecution history (or file wrapper) estoppel. File wrapper estoppel was disposed of above. For the reasons stated below, Defendant is incorrect in characterizing this as a rule of law to be determined at the *Markman* trial.

### 1. Equitable Determination (and Independent Creation)

This section of Defendants' trial brief is unfortunately poorly drafted. Defendants first seem to suggest that because the Supreme Court has taken *Hilton Davis* for review, the doctrine of equivalents is an equitable matter for the judge to decide. However, *Hilton Davis* still stands, it is squarely on point for the proposition that the doctrine is to be considered by the jury, and thus Defendants are in error. Defendants even concede in their statement of *Markman* issues of law in the Revised Pre-trial Conference Order that the Federal Circuit has found "that these are jury issues."

Defendants, however, then proceed to argue in their Trial Brief that the doctrine of equivalents should be addressed by the Court as an equitable matter anyhow. Defendants appear to make this strained argument so that they can refer to the issue of "independent creation"—*i.e.*, that Defendant did not copy Plaintiff's device—as a factor that might weigh in the Court's mind while making an equitable determination. However, *Hilton Davis* explicitly states that a defendant's explicit or intentional copying of a plaintiff's device is not a necessary requirement for infringement under the doctrine of equivalents. *Hilton Davis*, 62 F.3d at 1519 ("The doctrine of equivalents does not rely on the subjective awareness or intent of the accused infringer."). Rather, "lack of substantial differences, not the accused infringer's motives or intent, triggers application of the doctrine of equivalents." *Id.* at 1519–20.

Defendants are thus wrong on two counts. First, the doctrine presents issues of fact with which the jury must grapple. Second, based on clear precedent, even if the issue was before the Court, independent creation would not work as a complete defense to liability under the doctrine of equivalents.

### 2. Insubstantial Difference

Defendants contend that insubstantial differences must exist between the accused device and patented device for a finding of equivalency. It is true that in *Hilton Davis*, the Federal Circuit ruled that the "doctrine

---

**1.** This case is before the undersigned pursuant to the consent of the parties to proceed before a

of equivalents requires proof of *insubstantial* differences between the claimed and accused products or processes." 62 F.3d at 1521. However, and again, this is a question of fact for the jury, not the judge, to decide. When and if *Hilton Davis* is overturned, then the question may go to the court; but as it stands now, this is a jury question.

### III. CONCLUSION

As discussed above, items (a) through (d) of Defendants' *Markman* Trial Issues of Law (page 8, line 25, through page 9, line 27, of the Revised Pre–Trial Conference Order) are found to be issues relevant to the *Markman* proceedings and are hereby taken under submission. This Court thereby also intends to take under submission Plaintiff's sole *Markman* Issue of Law: "Construction of the claims." By taking these matters under submission, this Court necessarily continues the jury trial until a date to be set after conferring with counsel at the hearing scheduled for November 13, 1996.

Further, for the reasons stated above, items (e) through (i) of Defendants' *Markman* Trial Issues of Law (page 9, line 28, through page 10, line 20, of the Revised Pre–Trial Conference Order) are ruled to be outside of the purview of a *Markman* Trial.

IT IS SO ORDERED.